WESTWOOD COMMUNITY SCHOOL DISTRICT v CITY OF
DEARBORN HEIGHTS

SCHOOLS AND SCHOOL DISTRICTS—TAXATION—EXEMPTION—AGREEMENT
TO PAY.

The property of a school district is exempt from taxation by
statute, but the board of the school district may enter into an
agreement with governmental agencies whereby the school
district agrees to pay special assessments for local improve-
ments, and the statutory language "may enter into an agree-
ment" means substantially more than the school district unilat-
erally agreeing to pay a tax assessment when presented to it as
due, it connotes some kind of formalized concord if not an
actual formal contract; therefore, in the absence of a showing
that the school district entered into any agreement with re-
spect to the entire special assessments of the school district was
not contractually obligated to pay the remainder of the special
improvement tax assessments after paying the first two install-
ments.

Appeal from Wayne, George T. Martin, J. Sub-
mitted Division 1 January 4, 1973, at Detroit.
(Docket No. 13038.) Decided February 22, 1973.

Complaint by Eugene Thompson, Treasurer of
the Board of Education of the Westwood Commu-
nity School District, against the City of Dearborn
Heights for an injunction to prevent a tax sale and
for declaratory judgment to void a special assess-
ment. Summary judgment for plaintiff. Defendant
appeals. Affirmed.

*G. Daniel Ferrera,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTE
51 Am Jur, Taxation § 567.

*Duane Dunick,* Corporation Counsel, and *Theodore Monolides,* Assistant Corporation Counsel, for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and ADAMS,* JJ.

T. M. BURNS, J. This appeal stems from special-improvement tax assessments levied against the Board of Education for the Westwood Community School District by the City of Dearborn Heights (hereinafter referred to as the city).

In 1965, the city undertook a program of public improvements which consisted primarily of street and sidewalk paving. A portion of these improvements were installed on property owned by the school district. Accordingly, the school district was assessed $29,530.04 for these improvements. This sum was to be paid in ten equal yearly installments including interest at the rate of six percent per annum.

When the first annual installment became due in 1966, the school board adopted a resolution authorizing payment of the installment. Similar action was taken by the school board in 1967 relative to that year's installment. Up to this point a total of $4,628.01 had been paid to the city by the school board. No further annual payments were made after 1967, and on November 6, 1969, the school board passed a resolution not to make any more payments on the remaining installments. As a result of its failure to pay the special-assessment tax installments, the school district's improved property was placed on the tax-sale rolls in March of 1971.

The school district, relying on its tax-exempt

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

status under MCLA 340.354; MSA 15.3354, petitioned the Wayne County Circuit Court for relief from the tax sale, and from further payment of the special-assessment tax installments. After a hearing was held on the matter, the circuit court issued an interlocutory order enjoining the sale of the school district's property.

Thereafter both the school district and the city moved for a summary judgment pursuant to GCR 1963, 117.2(3) on the ground that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law.

The school district asserted that under MCLA 340.354; MSA 15.3354, it was under no obligation to pay any of the special-assessment taxes levied by the city. On the other hand, it was the city's position that the resolutions passed by the board of education, coupled with payments of the installments for two years, constituted an agreement to pay under the statute cited above, and thus rendered the school district liable for the entire amount of the special-improvement tax assessments. The circuit court disagreed with this latter contention, concluded that the school district was under no contractual obligation to pay the special-improvement assessments, and entered a summary judgment in favor of the school district. From this decision, the city appeals.

Since both parties in their motions for summary judgments averred that there were no material questions of fact, we are confronted with precisely the same question which faced the trial court, namely whether as a matter of law the school district was contractually obligated to pay the remaining special-improvement assessments. See GCR 1963, 117.2(3).

The resolution of this issue depends upon the

interpretation and construction of MCLA 340.354; MSA 15.3354, which provides in pertinent part:

"The property of all school districts shall be exempt from all taxation * * * The board of any school district may enter into an agreement with any county or county agency, city, village or township whereby the school district agrees to pay special assessments for local improvements."

There is no authority directly on point to guide us. However, after a thorough review of the briefs and records herein, we find the opinion of the lower court persuasive and adopt those portions of it arrayed below as the opinion of this Court.

The circuit court analyzing the statute in connection with the facts of the instant case stated:

" * * * [T]he critical language of the proviso [MCLA 340.354; MSA 15.3354] is: 'The board of any school district *may enter into an agreement.'* This clearly connotes at the very least some kind of formalized concord between the assessing authority and the school district itself, if not an actual formal contract.

"This means substantially more than the plaintiff school district unilaterally agreeing to pay a tax assessment when presented to it as due. There has been no showing whatever either in the pleadings or in oral argument that the plaintiff school district entered into any agreement with the defendant to the entire special assessments. Defendant [the city] has not alleged that it or any taxpayer relied to his detriment on any specific agreement of the school district to pay the assessments in full.

"The court has been given the relevant minutes of plaintiff school board, which read:

" '8/4/66. Resolution #14249.

" 'Under Construction Bills. The School Board approved sidewalk paving special assessments, of Roosevelt Jr. High School, in the amount of $882.98, and

street paving on Pennie (Thorne School) in the amount of $617.86 totalling $1,500.64.

" '8/17/67. Resolution #14822.

" 'George McGuire recommended the Board of Education give consideration to paving and sidewalk assessments. Matter referred to next executive session for study. Action to be taken at next regular meeting.

" '8/21/67. Resolution #14917.

" 'Motion made and supported that the paving assessments on Gulley Road at Robichaud and paving assessments on Pennie at the Thorne School and sidewalk assessment on Notre Dame between Gulley and Beech Daly in the amount of $3,916.30 be ordered paid. Bills for October 5, 1967 under (bg) approved.

" '2/22/68. Resolution #15347.

" 'Adopted 1967–68 budget. Included $10,000 for paving assessments. (This was for a City of Inkster assessment.)

" '11/8/69. Resolution #16758.

" 'That the District not pay the assessments to the cities of Dearborn Heights and Inkster assuming that the District is acting within the law.'

"Assuming that the plaintiff's school board resolutions were 'an agreement', the so-called agreement completely lacks mention that the plaintiff agreed to pay the entire special assessments levied. The language is limited and description is meager other than as to the amounts plaintiff agreed to pay. The court has not been shown any agreement or any resolution that the plaintiff school district agreed to pay the full $29,530.04 sought by the defendant.

"Viewed in the light most favorable to the defendant, the most that the plaintiff's resolutions show is that it agreed in 1966 and 1967 to pay defendant certain amounts on the special assessments, namely a total of $4,628.01, the total amount plaintiff and defendant agreed was paid."

For the reasons delineated above, we conclude that the circuit court did not err by finding that the plaintiff school district was not contractually

obligated to pay the remainder of the special-improvement tax assessments. The entry of the summary judgment in favor of the plaintiff was, therefore, proper.

Affirmed.

All concurred.